IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **HUGH HECKMAN** <br><br> Plaintiff, <br><br> v. <br><br> **PBS NEWSHOUR PRODUCTIONS, LLC, WNET** <br><br> and <br><br> **APC WORKFORCE SOLUTIONS II, LLC** <br><br> Defendants. | Case No. <br><br><br> **Complaint and Jury Demand** |

**PRELIMINARY STATEMENT**

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. After a long and honorable career as a news writer at CBS, with two Emmy awards and seven Writer's Guild Awards to his credit, Plaintiff, Hugh Heckman, took a weekend job with Defendant PBS Newshour Productions, LLC ("Newshour") and/or WNET, through Defendant APC Workforce Solutions II, LLC ("APC").

3. Plaintiff performed his job duties well and received numerous compliments and accolades from managers and co-workers.

4. Despite this, Plaintiff was terminated because of sex and sex stereotyping, in that he was terminated for making an innocuous remark that was interpreted by his employers to constitute sexual harassment, because they assumed incorrectly that a male must be guilty of sexual harassment if a female employee complained, even though the remark was a stray and

1

isolated remark that had no sexual intent nor harassing intent and was not directed at any co-workers.

5. Plaintiff informed and complained to his employers that a female employee had recently made a similar remark in the presence of witnesses, and that she had not been subjected to investigation or discipline.

6. Plaintiff's employers took no action on his complaint, undertook no investigation, and imposed no discipline on the female employee.

7. Plaintiff strongly condemns and repudiates the rampant sexual harassment that women endure, and contends that employer action in cases like this one dilutes and diminishes the force and effect of those many legitimate cases that do constitute sexual harassment.

**PARTIES**

8. Defendant Newshour has a principal office address at 2775 South Quincy Street, Arlington, Arlington County, VA 22206.

9. Newshour has continuously been doing business in the state of New York during all times pertinent to this action, and has continuously employed at least fifteen (15) employees.

10. Defendant WNET has a principal office address at 450 W. 33rd Street, New York, New York County, New York 10001.

11. Newshour has continuously been doing business in the state of New York during all times pertinent to this action, and has continuously employed at least fifteen (15) employees.

12. Defendant APC Workforce Solutions II (APC), doing business as ZeroChaos, has a principal office address at 420 South Orange Avenue, Orlando, Florida 32801.

13. APC has continuously been doing business in the state of New York during all times pertinent to this action, and has continuously employed at least fifteen (15) employees.

14. Plaintiff worked as an employee of Defendants in New York, New York County, New York.

Case 1:18-cv-09854-DAB   Document 1   Filed 10/25/18   Page 3 of 11

15. At all relevant times, Defendant NewsHour has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

16. At all relevant times, Defendant WNET has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

17. At all relevant times, Defendant APC has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

18. Plaintiff resides in the City of New York, Queens County, State of New York.

19. All events relevant to this action occurred at the Defendants' facility in New York, New York County, New York.

## PROCEDURAL HISTORY

20. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleging violations of Title VII, including discrimination based on sex, by Defendants on or about February 28, 2018.

21. The EEOC provided Defendants with notice of the charges of discrimination.

22. The EEOC investigated the charges of discrimination.

23. Plaintiff received a Notice of Right to Sue from the EEOC notifying him of his right to bring suit, and he has filed suit within 90 days of receipt of the notice.

24. Plaintiff took all necessary steps to fulfill all conditions precedent to the commencement of this lawsuit.

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action is based on Title VII of the Civil Rights Act and pursuant to 28 U.S.C. § 1337 because the action is based on a federal statute regulating commerce.

26. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the unlawful employment practices are alleged to have been committed within the jurisdiction of the District of Maryland.

27. Venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices are alleged to have been committed within the jurisdiction of the Southern District of New York.

## FACTS

**Employment with Defendants**

28. Plaintiff, Mr. Hugh Heckman is a male citizen of the United States.

29. In or about November 2015, Plaintiff was hired by Defendants as a Writer/Editor for the Newshour Weekend Broadcast at their facility in the City of New York, New York County, New York.

30. Defendants agreed to hire Plaintiff.

31. Plaintiff was an "at-will" employee.

32. Plaintiff was told that he would be needed for about a year.

33. Defendants approved Plaintiff's hire.

34. Executive Producer Scott Davis repeatedly asked Plaintiff to stay on after the year was completed.

35. Upon information and belief, all Defendants controlled some aspects of Plaintiff's compensation or terms, conditions, or privileges of employment.

36. Defendants had interrelated operations, such as working on or cooperating on record keeping, finances, and HR decisions, centralized control of labor relations, such as working on or cooperating on hiring and firing, and common financial interactions, such as working on and cooperating on financial accounts and financial recordkeeping.

37. Defendants worked on or cooperated on some aspects of hiring and firing personnel, including Plaintiff.

38. Defendants worked on or cooperated on day-to-day supervision of Plaintiff, including Plaintiff, such as employee management and employee discipline and employee.

39. Newshour and/or WNET furnished the equipment used and the place of work by Plaintiff

40. Upon information and belief, Defendants had possession of and access to Plaintiff's employment records via electronic systems, including payroll, insurance, and taxes

41. Upon information and belief, Defendants were responsible for different aspects of Plaintiff's payroll, insurance and taxes.

42.  Plaintiff has worked with Defendants for over two years.

43. Defendants provided Plaintiff with formal and informal training.

44. Plaintiff's duties were akin to a regular employee's duties, in that he attended at the place of work of Newshour and/or WNET, worked under the direction of NewsHour and/or WNET management, was provided with the means of work performance by NewsHour and/or WNET, and was measured on work performance by NewsHour and/or WNET.

45. Plaintiff was assigned solely to NewsHour and/or WNET.

46. Plaintiff intended to enter into an employment relationship with NewsHour and/or WNET.

47. Plaintiff understood Defendant APC's role to be that of a regulatory compliance vendor, such as payroll, recordkeeping, and tax documentation.

**The Incident Causing Termination**

48. On November 25, 2017, Plaintiff was at work on a story in his capacity as News Writer regarding the Royal Family of Britain, specifically His Royal Highness Prince Henry of Wales, Duke of Sussex, and his then-fiancee, Meghan, Duchess of Sussex (née Meghan Markle) (the "Duchess").

49. Plaintiff was viewing a picture of the Duchess with another male employee.

50. Plaintiff said "not bad" to this co-worker in a low tone of voice.

51. By this remark, Plaintiff intended to convey that the Duchess possessed charm and beauty and was a suitable match for her fiance, who has a reputation of possessing charm and handsome looks.

52. Plaintiff did not intend his remark to be a sexual comment about the Duchess.

53. A reasonable person would not have construed his remark to be a sexual comment about the Duchess.

54. No reasonable woman would consider his remark to be a sexual comment about the Duchess.

55. Nonetheless, a female employee, Corinne Segal, sitting at her desk about 20 feet away, who could not see the picture being shown to Plaintiff, heard this remark and criticized Plaintiff, stating that he had acted in contravention to the training that all employees had recently attended regarding sexual harassment in the workplace

56. Co-worker Kamala Kelkar added, in a disparaging tone, "haven't you learned?"

57. Plaintiff was embarrassed and upset by this criticism of his innocently intended comment, and immediately explained that he had not intended any sexually harassing remark.

58. He also felt that this over-policing of his innocently intended remark, and its being twisted into an accusation of sexual harassment, was unduly punitive and said so.

59. Upon information and belief, Ms. Segal complained to Mr. Davis, the Executive Producer, about Plaintiff's remark.

60. Upon information and belief, Defendants did not conduct an investigation of the facts of the matter.

61. Defendants did not interview Plaintiff to hear his testimony regarding the allegations.

62. On November 27, 2017, Executive Producer Scott Davis called Plaintiff and told him that "regretfully," he was "letting you go."

63. Davis gave as a reason "this latest incident," which referred to the Plaintiff's remark set forth above.

64. Plaintiff informed and complained to Davis that two female employees, Corrine Segal and Kamala Kelkar, had recently made a similar remark in the presence of witnesses.

65. Segal and Kelkar had been looking at a picture of a man, specifically, Prime Minister of Canada Justin Trudeau, and stated that he is "hot," intended as a reference to Mr. Trudeau's sex appeal.

66. Plaintiff's employers took no action on this complaint, undertook no investigation, and imposed no discipline on the female employee.

67. Defendant APC has stated that Plaintiff that he was terminated because "his services were no longer needed," while acknowledging that "some of the discussions leading up to this decision were a leading factor."

68. Defendants enforced their policies regarding sexual harassment in a manner that was discriminatory, specifically that they dismissed a male employee with no investigation

within two days, but took no action when placed on notice of a similar remark by female employees in the presence of witnesses.

69. Upon information and belief, Defendants had policies calling for "progressive discipline," that is, the process of using increasingly severe steps or measures when an employee fails to correct a problem after being given a reasonable opportunity to do so.

70. Defendants violated their progressive discipline policies by jumping to the "nuclear option" of termination for an innocuous remark because of Plaintiff's sex.

71. Defendants' purported nondiscriminatory rationale for Plaintiff' termination — that his services were "no longer needed,"— is implausible, not worthy of credence, and not honestly asserted as a legitimate, non-discriminatory reason for termination.

72. Defendants' purported nondiscriminatory "no longer needed" rationale for Plaintiff's termination was based on sex and gender stereotypes and bias-based beliefs about males, and about sex and gender.

73. Defendants' purported legitimate, non-discriminatory "no longer needed" rationale for Plaintiff's termination is a pretext for discrimination because of sex.

74. To the extent that Defendants rely on the events described above as a rationale for termination, it constitutes sex discrimination against Plaintiff, as it is based on sex and gender stereotypes and bias-based beliefs about males, and about sex and gender.

75. The very different treatment of the complaint against Plaintiff, and Plaintiff's complaint about a similar remark by female employees, demonstrates disparate treatment against Plaintiff because of his sex.

76. Upon information and belief, shortly after his termination, despite Defendants' statement that Plaintiff's services were "no longer needed," another person was hired for the same job

duties that Plaintiff had previously been performing.

## CAUSES OF ACTION

### COUNT 1
### 42 U.S.C. § 2000e, et seq.
### Termination Because of Sex Against All Defendants

77. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

78. Defendants were joint employers of Plaintiff.

79. As set forth above in detail, Defendants had authority to hire and fire individuals for Plaintiff.

80. As set forth above in detail, Defendants engaged in day-to-day supervision of Plaintiff, including employee discipline.

81. As set forth above in detail, Defendants furnished equipment used and the place of work.

82. As set forth above in detail, Defendants had possession of and responsibility over the Plaintiff's employment records.

83. As set forth above in detail, Plaintiff worked with NewsHour and APC for a substantial length of time.

84. Defendants terminated Plaintiff's because of sex and sex stereotyping.

85. As a direct and proximate result of Defendants' illegal discharge of Plaintiff, Plaintiff has incurred damages including but not limited to lost wages, emotional distress, humiliation, loss of enjoyment of life, damage to his professional reputation, and other pecuniary and non-pecuniary losses.

86. Defendants acted intentionally or recklessly in regard to Plaintiff's federally protected rights, for which he seeks punitive damages.

### COUNT 2
### NYHRL § 296, et seq.
### Termination Because of Sex Against All Defendants

87. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

88. Defendants terminated Plaintiff because of sex and sex stereotyping in violation of the New York State Human Rights Law §296, et seq.

89. As a direct and proximate result of Defendants' illegal discharge of Plaintiff, Plaintiff has incurred damages including but not limited to lost wages, emotional distress, humiliation, loss of enjoyment of life, damage to his professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 3**
**NYCHRL § 8-107, et seq.**
**Termination Because of Sex Against All Defendants**

90. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

91. Defendants terminated Plaintiff because of sex and sex stereotyping in violation of the New York City Human Rights Law, New York City Administrative Code § 8-107, et. seq.

92. As a direct and proximate result of Defendants' illegal discharge of Plaintiff, Plaintiff has incurred damages including but not limited to lost wages, emotional distress, humiliation, loss of enjoyment of life, damage to his professional reputation, and other pecuniary and non-pecuniary losses.

93. Defendants NewsHour and APC acted intentionally or recklessly in regard to Plaintiff's New York City protected rights, for which he seeks punitive damages.

**JURY DEMAND**

94. Plaintiff hereby demands a trial by jury of all issues triable by a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Hugh Heckman respectfully requests that this Court:

A. Declare that the acts, practices, and omissions complained of herein are unlawful and violate Title VII;

B. Order Defendants to institute and carry out policies, practices, programs, and training which provide equal employment opportunities for employees based on sex;

C. Order other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices;

D. Direct Defendants to pay Plaintiff for past and future pecuniary losses resulting from the unlawful practices complained of in the foregoing paragraphs;

E. Direct Defendants to pay Plaintiff for past and future non-pecuniary losses resulting from the unlawful practices complained of in the foregoing paragraphs, including humiliation, emotional distress, loss of enjoyment of life, damage to his professional reputation, and other non-pecuniary losses in an amount to be determined at trial;

F. Direct Defendants to pay Plaintiff punitive and special damages for its intentional or reckless conduct described in the foregoing paragraphs, in an amount to be determined at trial;

G. Award Plaintiff attorneys' fees, costs, and disbursements as provided by law; and

H. Award such additional relief as justice may require.

Dated: October 25, 2018

Respectfully submitted,


LAW OFFICE OF JILLIAN T. WEISS, P.C.

BY:      /s Jillian T. Weiss

JILLIAN T. WEISS (JW4542)
527 Hudson Street
P.O. Box 20169
New York, New York 10014
Tel: (845) 709-3237
Fax (419) 794-8991
jweiss@JTweisslaw.com

Attorney for
Plaintiff Hugh Heckman